**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ROLAND P. HAMILTON,<br><br>  Plaintiff,<br><br>v.<br><br>ROMEO ARANAS, *et al.*,<br><br>  Defendants. | Case No.: 3:15-cv-00342-RCJ-WGC<br><br>**REPORT & RECOMMENDATION<br>OF U.S. MAGISTRATE JUDGE**<br><br>Re: ECF No. 70 |

This Report and Recommendation is made to the Honorable Robert C. Jones, Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is defendant Dr. Romeo Aranas' renewed motion for summary judgment. (ECF Nos. 70, 70-1 to 70-70-6.) Plaintiff filed a response. (ECF No. 73.) Dr. Aranas filed a reply. (ECF No. 78.)

After a thorough review, it is recommended that Dr. Aranas' motion be granted because Plaintiff failed to exhaust his administrative remedies with respect to the only remaining claim.

**I. BACKGROUND**

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Am. Compl., ECF No. 7-1.) Dr. Aranas is the sole defendant.

In the amended complaint, Plaintiff alleges that he had surgery on an abdominal aortic aneurysm (AAA) on June 10, 2013. (ECF No. 7-1 at 5, 10.) Between June 27, 2013, and July 3, 2013, he claims that Dr. Aranas examined him and diagnosed him with a surgical hernia, but said there was nothing he could do about it. (*Id*. at 6, 11.) In addition, he claims that Dr. Aranas told him he would not be seen for his follow up with the physician who performed the AAA repair surgery. (*Id*. at 6-7, 11-12.) He eventually had surgery on the hernia on June 25, 2014, but it was unsuccessful. (*Id*. at 5, 8, 13.) Plaintiff alleges that Dr. Aranas was aware of his hernia and failed to respond to it, resulting in a delay of surgery for the hernia. (*Id*. at 11-12.) He contends he suffered damage to his abdomen and deterioration to his stomach muscles as a result. (*Id*. at 11-12, 14.)

Dr. Aranas previously moved for summary judgment, arguing he was not deliberately indifferent to a serious medical need. (ECF No. 22.)

The undersigned issued a report and recommendation that Dr. Aranas' motion be granted. (ECF No. 43.) To the extent Plaintiff's claim was premised on an argument that Dr. Aranas should have recommended surgery for repair of the surgical hernia, the court concluded there was a difference of opinion and Plaintiff did not introduce evidence that Dr. Aranas' decision was medically unacceptable or chosen in conscious disregard of an excessive risk to Plaintiff's health. Insofar as Plaintiff's claim was based on the allegation that Dr. Aranas did not refer Plaintiff back to Dr. Quynh Nguyen Feikes (who had performed the AAA repair surgery), the court recommended granting summary judgment because there was no evidence that not sending Plaintiff back to Dr. Feikes subjected him to any further risk to his health.

District Judge Jones adopted and accepted the report and recommendation and entered judgment in Dr. Aranas' favor. (ECF Nos. 48, 49.)

1  Plaintiff appealed. (ECF No. 50.) The Ninth Circuit affirmed in part, reversed in part, and
2 remanded the case to the district court. (ECF No. 55.) The Ninth Circuit affirmed to the extent
3 Plaintiff's claim was based on Dr. Aranas allegedly failing to recommend surgery for the hernia.
4 Insofar as Plaintiff's claim was based on Dr. Aranas denying him a follow up appointment with
5 Dr. Feikes, the Ninth Circuit reversed. The Ninth Circuit reasoned that the record reflects that after
6 Plaintiff told Dr. Aranas he was supposed to have a follow up appointment with Dr. Feikes,
7 Dr. Aranas told him it "was not going to happen" and there was no explanation in the record as to
8 why Dr. Aranas did not refer the matter to the Utilization Review Panel. The Ninth Circuit
9 concluded that Plaintiff raised a genuine dispute of material fact as to whether Dr. Aranas chose
10 this course in conscious disregard of an excessive risk to Plaintiff's health, and so reversed and
11 remanded for this claim only.

12  Dr. Aranas has filed a renewed motion for summary judgment, arguing: (1) Plaintiff failed
13 to exhaust administrative remedies as to the remaining claim—that he was supposed to have a
14 follow up appointment with Dr. Feikes or that Dr. Aranas denied him that follow up; (2) regardless
15 of whether Plaintiff exhausted this claim, they have a declaration from Dr. Feikes that Dr. Aranas
16 was able to perform the follow up and no formal follow up was ever scheduled or cancelled; and
17 (3) he is entitled to qualified immunity because it was not clearly established that a prison doctor
18 violates constitutional rights under these circumstances.

## II. LEGAL STANDARD

20  "The purpose of summary judgment is to avoid unnecessary trials when there is no dispute
21 as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468,
22 1471 (9th Cir. 1994) (citation omitted). In considering a motion for summary judgment, all
23 reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810

(9th Cir. 2008) (citation omitted). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

In evaluating whether or not summary judgment is appropriate, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine dispute as to a material fact; and (3) considering the evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-50. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. at 248.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id*. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

At summary judgment, the court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine dispute of material fact for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmoving party is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-50 (citations omitted).

///

///

///

///

### III. DISCUSSION

**A. Exhaustion**

**1. Exhaustion Standard**

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his administrative remedies irrespective of the forms of relief sought and offered through administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

"If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts [in a preliminary proceeding]." *Id*., 1168, 1170-71 (citations omitted).

Once a defendant shows that the plaintiff did not exhaust available administrative remedies, the burden shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id*. at 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996)); *Draper v. Rosario,* 836 F.3d 1072, 1080 (9th Cir. 2016)).

The Supreme Court has clarified that exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance, but rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "Proper exhaustion" refers to "using all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id*. (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). Thus,

6

"[s]ection 1997e(a) requires an inmate not only to pursue every available step of the prison grievance process but also to adhere to the 'critical procedural rules' of that process." *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

A grievance is sufficient "if it alerts the prison to the nature of the wrong for which redress is sought." *Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010) (quoting *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009)). The grievance "need not include legal terminology or legal theories" as its "primary purpose ... is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." *Griffin*, 557 F.3d at 1120.

**2. Exhaustion Within NDOC**

NDOC's grievance process is set forth in Administrative Regulation (AR) 740. (ECF No. 70-4.) An inmate must try to informally resolve an issue and then proceed through three grievance levels—informal, first and second—to exhaust administrative remedies before filing a lawsuit.

**3. Analysis**

Dr. Aranas argues that Plaintiff never exhausted his claim that Dr. Aranas denied Plaintiff a follow up appointment with Dr. Feikes.

Plaintiff's response merely states that he exhausted his administrative remedies to the best of his belief and knowledge of the law.

Dr. Aranas has submitted grievance documentation for grievance 20062987871 to support his argument that Plaintiff failed to exhaust administrative remedies. (ECF No. 70-2.)

Plaintiff filed an informal level grievance on October 28, 2014. (ECF No. 70-2 at 13-27.) He stated that he had a surgical hernia caused by surgery to repair the AAA on June 10, 2013. (*Id.* at 13.) Dr. Caravalla performed surgery to repair the hernia on June 25, 2014, but the hernia was

7

starting to reoccur. (*Id*. at 13-14.) He saw Dr. Koehn about the hernia on October 21, 2014, and Dr. Koehn authorized an abdominal binder and advised Plaintiff to lose weight. (*Id*. at 14.) Plaintiff complained that the abdominal binder would not cure the hernia or ease his pain. (*Id*. at 14-15.) He asserted that NDOC was deliberately indifferent because Dr. Caravalla's surgery to repair the hernia was unsuccessful. (*Id*. at 15-16.) He requested surgery to permanently repair the hernia, among other things, as a remedy for his grievance. (*Id*. at 17-21.)

The informal level grievance was denied, stating: "The abdominal binder is appropriate at this time per the provider. Your pain medication was discontinued on 10/20/14 as there were 150 tablets of Tylenol found in your cell on 10/14/14." (ECF No. 70-2 at 12.)

Plaintiff's first level grievance is dated December 23, 2014, and stated that the response to the informal level grievance had nothing to do with the complaint; the abdominal binder would not repair or cure the hernia or ease his pain; and, that NDOC was responsible for the damage done by the surgeon who performed the AAA surgery. (ECF No. 70-2 at 8-11.) The first level grievance was denied, stating: "Dr. Koehn issued you a hernia belt to support your abdominal wall and hernia. Wearing the belt as instructed will help to relief your discomfort." (ECF No. 70-2 at 7.)

In the second level grievance, Plaintiff stated that the issue was a hernia that resulted from a "botched surgery to repair the abdominal aortic aneurysm [I] had," and that his grievance was about having the hernia repaired since it was the "N.D.O.C. surgeon[']s fault that I even have this hernia." (ECF No. 70-2 at 2, 4.) The second level grievance was denied, and advised Plaintiff that if he needed further evaluation of the hernia, he should submit a kite to medical for evaluation. (*Id*. at 3.)

///

///

1    Plaintiff did not mention anything about Dr. Aranas' failure to have Plaintiff see Dr. Feikes
2 for the follow up appointment that was discussed in his discharge papers from the AAA surgery.
3 Therefore, this grievance did not put prison officials on notice of this issue. Plaintiff provides no
4 evidence in response to the motion that he did in fact properly grieve this claim or that
5 administrative remedies were otherwise unavailable to him. Therefore, summary judgment should
6 be granted in Dr. Aranas' favor as to this remaining claim.

7    While the failure to exhaust administrative remedies usually results in dismissal of a claim
8 without prejudice, AR 740 requires an inmate to raise an issue in a grievance within six months.
9 Therefore, Plaintiff could not timely initiate a grievance on this issue at this point, and the dismissal
10 of the claim should be with prejudice.

11    In light of this conclusion, the court need not reach Dr. Aranas' arguments regarding the
12 merits of the claim or as to qualified immunity.

### IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **GRANTING** Dr. Aranas' renewed motion for summary judgment and entering judgment in his favor.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED: December 11, 2018.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE